[D.I. 219, 238]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DAVID CONNOR CASTELLANI,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF ATLANTIC CITY, et al.,<br><br>    Defendants. | Civil No. 13-5848 (JBS/AMD) |

**MEMORANDUM OPINION AND ORDER**

Presently pending before the court is a motion [D.I. 219] filed by Plaintiff David Connor Castellani (hereinafter, "Plaintiff") seeking to quash a second subpoena served upon non-party Jill Houck, the Director (hereinafter, the "Director") of the Atlantic-Cape May County Superior Court Pretrial Intervention Program (hereinafter, "PTI") for documents related to Plaintiff's entry into the PTI program following an indictment on a number of charges stemming from an arrest on June 15, 2013. (See Plaintiff's Motion to Quash Subpoena (hereinafter, "Pl.'s Mot.") [D.I. 219].) The Director has also filed a Motion to Quash [D.I. 238] in support of Plaintiff's motion. (See Second Motion to Quash Pursuant to Fed. R. Civ. P. 45 (hereinafter, "Director's Mot.") [D.I. 238].) Defendant Officers Darren Lorady, Avette Harper, Kevin Law, Scott

1

Sendrick, and Matthew Rogers (hereinafter, "Defendant Officers") oppose the motions of Plaintiff [D.I. 244] and the Director [D.I. 245]. (See Defendants' Opposition to Plaintiff's Second Motion to Quash Subpoena to PTI Director (hereinafter, "Defs.' Opp'n to Pl.") [D.I. 244]; see also Defendants' Opposition to Non-Party Jill Houck's Motion to Quash Subpoena to PTI Director (hereinafter, "Defs.' Opp'n to the Director") [D.I. 245].) Defendant Officer Sterling Wheaten joins in Co-Defendants' opposition. (See Statement of Intention to Join in Opposition by Defendants [D.I. 246].) For the reasons set forth herein, the motions by Plaintiff [D.I. 219] and the Director [D.I. 238] are granted.

These motions seek to quash a second subpoena served upon the Director in this matter. The Court previously granted motions to quash a previous subpoena served upon the Director by Order dated June 30, 2016. See Castellani v. City of Atlantic City, No. 13-5848, 2016 WL 7131578, at *1 (D.N.J. June 30, 2016). The Court will therefore restate the background of this case pertinent to these motions as set forth in the prior Order:

> In this action, Plaintiff David Connor Castellani seeks damages for injuries he sustained when he was arrested by police officers of the Atlantic City Police Department on June 15, 2013 following an incident at the Tropicana Hotel and Casino in Atlantic City, New Jersey. (See generally Amended Complaint [D.I. 7].) While Plaintiff admits that he was intoxicated at the time, he asserts that certain officers physically assaulted him and that one officer directed a canine to attack

2

>him. (See id.) Plaintiff has asserted claims under 42 U.S.C. § 1983 against the Defendant Officers, as well as Defendant Sergeant Daryl Hall and Defendant City of Atlantic City (hereinafter, "Defendant Atlantic City"). (See generally id.)
>
>In February 2015, a New Jersey state grand jury sitting in Mays Landing, New Jersey, indicted Plaintiff on three criminal counts relating to the June 15, 2013 incident: "(1) aggravated assault upon a police officer; (2) resisting arrest; and (3) infliction of harm upon an enforcement animal." (See Defs.' Opp. [D.I. 115], 5.) Thereafter, on July 23, 2015 Plaintiff was granted admission to the PTI program. Id. On or about September 23, 2015, the Director was served with a subpoena which sought the production of "[a]ny and all documents related to and/or referring to David Connor Castellani's application to the State of New Jersey Pre-Trial Intervention Program related to criminal charges as a result of an incident that occurred on or about June 15, 2013." (See Pl.'s Motion, Ex. A [D.I. 104-2], 2.)

Id.

In the Court's prior order, the Court granted the Defendant Officers leave to serve a revised subpoena setting forth specifically the categories of information Defendants sought from the PTI application. See id. at *5. On August 1, 2016, the Director was served via certified mail with a second subpoena. (See Brief in Support of Non-party Jill Houck's Motion to Quash Second Subpoena (hereinafter, "Director's Br.") [D.I. 238-2], 5-6.) The second subpoena demanded the Director produce to Defendant Officers "Plaintiff's statement in connection with his PTI

3

application; any witness statements offered in support or connection with Plaintiff's PTI application; any character witness statement offered in support of Plaintiff; and any written responses to questions provided by Plaintiff in connection with his PTI application." (See Pl.'s Motion, Ex. A [D.I. 219-2], 2.)[1]

As set forth previously by the Court in its prior Order:

> Under Federal Rule of Civil Procedure 26(b)(1), as amended, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1)[2]. Under Rule 26, a party may seek to avoid production of otherwise relevant information on the basis that the production is protected by a privilege. Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000). In the context of discovery served upon a non-party, under Federal Rule of Civil Procedure 45, the court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected

---

[1] Exhibit A is the second subpoena served by defense counsel for the Defendant Officers.

[2] The Court finds that it is just and practicable to review the Plaintiff's motion under Federal Rule of Civil Procedure 26 as most recently amended. See 2015 US ORDER 0017 (setting forth the 2015 Amendments to the Federal Rules of Civil Procedure and stating "the foregoing amendments . . . shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending").

4

> matter, if no exception or waiver applies."
> FED. R. CIV. P. 45(d)(3)(A)(iii).

Castellani, 2016 WL 7131578 at *2 (D.N.J. June 30, 2016).

At the outset, and for the reasons set forth in the Court's previous Order granting the motion to quash, Plaintiff has standing to file the current motion because "Plaintiff claims a personal right or privilege with respect to the documents sought by the subpoena." Id.

Under Rule 501 of the Federal Rules of Evidence,[3] "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law[,]" but "'when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule.'" Pearson, 211 F.3d at 66 (quoting Wm. T. Thompson Co. v. General Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982)). Thus, "[w]here ... there are both

---

[3] FED. R. EVID. 501 provides:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

federal and state law claims, federal privileges rather than state privileges apply to all claims." Wei v. Bodner, 127 F.R.D. 91, 94 (D.N.J. 1989) (citing Wm. T. Thompson Co., 671 F.2d at 104). As noted by the Court in the prior Order, as Plaintiff in this case has alleged both federal and state law claims, the Court will apply the federal law of privilege to all claims. See Castellani, 2016 WL 7131578 at *2 (citing Wei, 127 F.R.D. at 94).

The Court previously found that the PTI file is "clearly protected from disclosure in civil matters under New Jersey law." Id. at *4. N.J.S.A. 2C:43-13(f) provides "that no statements by a PTI participant undergoing supervisory treatment be admitted into evidence in any civil or criminal proceeding 'against the participant.'"[4] Id. at *3 (quoting N.J.S.A. 2C:43-13(f)). Similarly, N.J. Ct. R. 3:28(c), the state court rule governing pretrial intervention programs, provides:

---

[4] Specifically, the provision states "[n]o statement or other disclosure by a participant undergoing supervisory treatment made or disclosed to the person designated to provide such supervisory treatment shall be disclosed, at any time, to the prosecutor in connection with the charge or charges against the participant, nor shall any such statement or disclosure be admitted as evidence in any civil or criminal proceeding against the participant. Nothing provided herein, however, shall prevent the person providing supervisory treatment from informing the prosecutor, or the court, upon request or otherwise as to whether or not the participant is satisfactorily responding to supervisory treatment." N.J.S.A. 2C:43-13(f).

> (5) No statement or other disclosure regarding the charge or charges against the participant made or disclosed by a participant in pretrial intervention to a person designated to provide supervisory treatment shall be disclosed by such person at any time, to the prosecutor, nor shall any such statement or disclosure be admitted as evidence in any civil or criminal proceeding against the participant, provided that the criminal division manager shall not be prevented from informing the prosecutor, or the court, on request or otherwise, whether the participant is satisfactorily responding to supervisory treatment.

N.J. Ct. R. 3:28(c)(5). Moreover, pursuant to New Jersey Court Rule 1:38-3(c)(5), "[r]ecords relating to participants in drug court programs and programs approved for operation under R. 3:28 (Pretrial Intervention), and reports made for a court or prosecuting attorney pertaining to persons enrolled in or applications for enrollment in such programs," are excluded from public access, with the exception of "the fact of enrollment and the enrollment conditions imposed by the court." N.J. Ct. R. 1:38-3(c)(5).[5] For the reasons set forth by the Court in the prior Order, which are incorporated herein, the Court finds that the PTI file is clearly protected from disclosure in civil matters under New Jersey law. The Court concludes as set forth in the prior Order, that while the "2C:43-13(f) prohibition refers to admissibility in civil or

---

[5] This provision has been relaxed by the New Jersey Supreme Court order dated December 6, 2016 with respect to certain records concerning risk assessments and pretrial release or pretrial detention, but such changes do not impact the Court's decision here.

criminal proceedings against the participant" and while "the New Jersey court rule is silent when the PTI applicant is a plaintiff in a civil action" the Court "does not read the prohibition so strictly when viewed in the context of the policy behind the PTI program. The Court concludes that under New Jersey law, the prohibition against disclosure applies in both civil and criminal actions." Castellani, 2016 WL 7131578 at *4. Thus, Plaintiff's PTI file is "clearly protected from disclosure in civil matters under New Jersey [state] law." Id.

The Court must next determine whether to give controlling effect to that state privilege in federal court. When the information sought is protected by a state privilege, "the case for recognizing a particular federal privilege is stronger." Pearson, 211 F.3d at 67. "[T]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one." Jaffee v. Redmond, 518 U.S. 1, 12-13 (1996). If a state privilege does not affect or interfere with federal substantive and procedural policy, a federal court may recognize a state privilege. See Pearson, 211 F.3d at 67 (observing that "'[a] strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural

policy'") (quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)).

As noted by the Third Circuit, the Court "must determine 'granting due respect to [New Jersey's] protections, whether a privilege of the kind sought . . . promotes sufficiently important interests to outweigh the need for probative evidence, where the need for probative evidence is viewed as a very weighty consideration indeed–to the extent that only the strongest considerations on the other side of the scale are capable of outweighing it.'" Swanger v. Warrior Run School District, 659 Fed. Appx. 120, 125 (3d Cir. 2016) (quoting Pearson, 211 F.3d at 69). In making that determination, the Court conducts a balancing analysis considering a number of factors including:

> 1) the need for the information to enforce federal substantive and procedural policies; 2) the importance of the state policy that supports the rule of privilege and the likelihood that recognizing the privilege will advance the state policy; 3) the special need of the litigant who seeks the information; and 4) any adverse impact on local policy if the privilege is not recognized.

Sabharwal v. Mount Sinai Med. Ctr., No. 09-1950, 2011 WL 477693, at *2 (E.D.N.Y. Feb. 4, 2011) (citing King, 73 F.R.D. at 105). See, e.g., In re Grand Jury Empanelled January 21, 1981, 535 F. Supp. 537, 541 (D.N.J. 1982) ("the principles of comity suggest generally that the federal courts should recognize state privileges 'where this can be accomplished at no substantial cost

9

to federal substantive and procedural policy'") (quoting King, 73 F.R.D. at 105); see also Robinson v. Magovern, 83 F.R.D. 79, 87-89 (W.D. Pa. 1979) (citing the King factors and applying them in determining whether to recognize Pennsylvania's peer review state privilege in federal court); cf. In re Grand Jury Investigation, 918 F.2d 374, 388 n. 12 (3d Cir. 1990) ("[i]n analyzing whether [a clergy-communicant] privilege exists under federal common law, we have also considered the balancing process described by Judge Weinstein in United States v. King").

The Court first considers whether there is a need for Defendants to have the statements contained in Plaintiff's PTI file in order to enforce any federal substantive or procedural policies. Defendants argue there is an "extremely compelling need" for the statements contained in Plaintiff's PTI file, as the statements "are needed to develop a full complete and accurate record[.]" (Defs.' Opp'n to the Director [D.I. 245], 7-8.) Both Plaintiff and the Director argue Defendants have no compelling need for the statements because Defendants have already had an opportunity to depose Plaintiff, as well as Plaintiff's family and friends. (See Plaintiff's Brief in Support of Motion to Quash Subpoena (hereinafter, "Pl.'s Br.") [D.I. 219-1], 5; see also Director's Br. [238-2], 15.) Plaintiff and the Director also point to Plaintiff's responses to written interrogatories and Defendants' access to the Atlantic County Prosecutor's Office's

10

"extensive" investigation as further evidence that no compelling need exists. Id. The Court notes that the federal interest in developing a complete factual record "serves the 'paramount public interest in the fair administration of justice.'" Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985) (quoting Lora v. Bd. of Educ. of the City of New York, 74 F.R.D. 565, 578 (E.D.N.Y. 1977)). The Court recognizes that statements made by Plaintiff and other witnesses to the incident giving rise to this litigation are probative and relevant. However, Plaintiff's PTI records are not the only source of this information and Defendants acknowledge as much as they seek the information for impeachment purposes, having already had ample opportunity to develop the factual record and depose Plaintiff and numerous witnesses.[6] Thus, the Court finds that recognition of the state privilege in this case will not detrimentally impact the federal interest of ensuring a complete factual record.

Turning next to the importance of the state policy underlying the privilege, the Court considers the likelihood that recognizing the privilege will advance the state policy. The Director asserts that "the privilege ... that prohibits the

---

[6] To the extent Defendants assert the PTI files are necessary to reveal undisclosed witnesses, (see Defs.' Opp'n to the Director [D.I. 245], 9), the Court rejects that argument. There has been no showing that Plaintiff has failed to identify any witnesses required to be identified under Federal Rule of Civil Procedure 26.

11

disclosure of the materials from Plaintiff's PTI file is based upon policies that promote significant State and public interests[.]" (See Director's Br. [D.I. 238-2], 13.) Specifically, the Director cites the PTI program's rehabilitative role in the identification and referral of defendants in need of treatment, as well as PTI's provision of addressing the problems of congestion and backlog in criminal courts. See id. at 11. The Director further asserts that, because admission into the PTI program is not predicated on any admission of guilt, "the often counterproductive stigma of conviction, which accompanies parole and probation, does not attach to participants in a PTI program." Id. at 11-12 (citing State v. Leonardis, 71 N.J. 85, 98-99 (1976)). Similarly, Plaintiff asserts the confidentiality of Plaintiff's PTI file is necessary to counter "'the often debilitating effects on a suspect from introduction to the criminal process[.]'" (Pls.' Br. [D.I. 219-1], 5 (quoting Leonardis, 71 N.J. at 93).) Defendants counter that only "certain statements" in Plaintiff's PTI file are sought, and assert that "[t]he state policy is not harmed if the statements are disclosed." (See Defs.' Opp'n to the Director [D.I. 245], 8.) As noted by the Court in its prior Order,

> [t]he reasoning behind New Jersey's law prohibiting the distribution [of] PTI files to third parties is to "protect the integrity of the PTI process." Szczech v. Carluccio, 665 A.2d 798, 802 (N.J. Super. Ct. Law Div. 1995). In order to protect the PTI process, the PTI files are not disclosed to third parties so

12

>"the government[ ] [may] conduct its affairs with skill, with sensitivity to the privacy interests involved, and in an atmosphere of confidentiality that encourages the utmost candor." Id.

Castellani, 2016 WL 7131578 at *4. However, Defendants' subpoena, which seeks statements of Plaintiff, witnesses, and written responses to questions, is not limited and conflicts with the state policy of encouraging candid participation in the PTI program. Indeed, such a policy is consistent with the federal policy underlying confidentiality of federal pretrial diversion information. See infra. The Court thus finds that recognizing the privilege would likely advance the rehabilitative and judicially economic goals of the state law.

The Court next considers whether there is any special need by Defendants for the PTI information they seek. Defendants argue they are "entitled to investigate a deponent's credibility with other statements made regarding the incident and Plaintiff's conduct," and that "the statements [may] lead to additional witnesses that have yet to be identified." (See Defs.' Opp'n to the Director [D.I. 245], 9.) Plaintiff argues in response that Plaintiff and Plaintiff's friends were all deposed and "[t]he only other witnesses to the incident were the defendants themselves." (See Pl.'s Br. [219-1], 5). As noted above, there is no compelling need for Defendants to have the statements in light of the extensive discovery already conducted in this case. See Komlosi v.

13

<u>New York State Office of Mental Retardation & Dev. Disabilities</u>, No. 88-1792, 1992 WL 77544, at *2 (S.D.N.Y. Apr. 3, 1992) (finding that documents collected during an investigation by the New York State Commission on Quality of Care for the Mentally Disabled were protected under New York state law where the individuals interviewed by the Commission were available for deposition). The Court finds that Defendants do not have a special need for Plaintiff's PTI documents.

  The Court next turns to consideration of whether there is any adverse impact on the state policy if the privilege is not recognized. Plaintiff asserts that "the important goal of rehabilitating non-violent offenders in an inexpensive way will be subverted if this Court disregards the state privilege." (<u>See</u> Pl.'s Br. [D.I. 219-1], 6.) Plaintiff further asserts that "failure to recognize this important state privilege would ... deter would-be applicants from participating in the Program." <u>Id.</u> at 7. The Director asserts that "confidentiality of PTI files and their contents encourages candor on the part of applicants and participants, efficient and successful rehabilitation, and the proper functioning of the PTI Program." (<u>See</u> Director's Br. [D.I. 238-2], 14.) As stated <u>supra</u>, the Court finds that the moving parties have articulated a sufficient concern that participants in the PTI program may be less likely to participate in the PTI program if a party could procure the statements made for use in a

14

civil action and further finds that factor as well supports recognition of a PTI privilege.

Although evidentiary privileges are "strongly disfavored in federal practice and must be narrowly drawn[,]" the Court may in the interest of comity recognize a state privilege "to the extent that doing so will not impose a substantial cost on federal policies." Freed v. Grand Court Lifestyles, Inc., 100 F. Supp. 2d 610, 618 (S.D. Ohio 1998). Here, the Court finds that recognizing a privilege with respect to state pretrial diversion records is consistent with federal policy as it relates to federal pretrial diversion records. Federal pretrial diversion is "an alternative to prosecution which seeks to divert certain offenders from traditional criminal justice processing into a program of supervision and services administered by the U.S. Probation Service." U.S. Dep't of Justice, United States Attorneys' Manual § 9-22.010 (1997) available at 1997 WL 1944677. The objectives of federal pretrial diversion include "prevent[ing] future criminal activity among certain offenders by diverting them from traditional processing into community supervision and services," as well as "sav[ing] prosecutive and judicial resources." Id. The confidentiality of pretrial services information including pretrial diversion reports is governed by 18 U.S.C. § 3153(c)(1). This subsection provides that "[e]xcept as provided in paragraph (2) of this subsection, information obtained in the course of

15

performing pretrial services functions in relation to a particular accused shall be used only for the purposes of a bail determination and shall otherwise be confidential." 18 U.S.C. § 3153(c)(1).[7] Subsection 2 provides for the Director of the Administrative Office of the United States Courts to "issue regulations establishing the policy for release of information made confidential" to allow access in certain enumerated exceptions, and specifically, as it relates to pretrial diversion reports, to permit access to the attorney for the accused and the attorney for the Government. 18 U.S.C. § 3153(c)(2)(D). The statute does not authorize civil litigants to access pretrial diversion records.  In Apex Tool Group, LLC v. Dmtco, LLC, No. 13-372, 2015 WL 8489388, at *2 (S.D. Ohio Dec. 11, 2015), the court found that the common-law presumptive right to public access to judicial records was "overridden by a federal statute," and denied the plaintiff's request to unseal the defendant's federal pretrial diversion documents. Significantly, the Apex court found that in drafting 18

---

[7] The confidentiality of pretrial services information "is preserved primarily to promote a candid and truthful relationship between the defendant and the pretrial services officer in order to obtain the most complete and accurate information possible for the judicial officer." The Administrative Office of the United States Courts Guide to Judiciary Policy, Vol. 8A, App'x 5A: Confidentiality Regulations § 1(C) (citing H. Conf. Rep. 97-792, 97th Cong., 2d Sess. 8). "Disclosure … for purposes other than for the determination of pretrial release … would deter defendants from cooperation with pretrial services officers and deprive the court of necessary information." Id.

U.S.C. § 3153(c), Congress deliberately "did not adopt as an exception providing such information when it might be useful to impeach a diverted defendant in a civil case, even one brought by the victim of the crime." Id. at *1. The Apex court further noted that "by providing for certain specified exceptions, the Congress has impliedly excluded" exceptions for the release of pretrial diversion information in civil matters, even for impeachment purposes. Id. The Court agrees with the Apex court and finds that the statute governing the confidentiality of pretrial diversion records does not permit access by civil litigants. This finding therefore further supports the Court's conclusion that the motions to quash should be granted.

Consequently, the Court recognizes the state privilege prohibiting the disclosure of Plaintiff's PTI file as a matter of federal common law. Such a privilege is not only supported by the factors set forth in King, but also consistent with federal confidentiality law governing federal pretrial diversion records. Accordingly, the motions to quash are granted.

For the reasons set forth herein, and for good cause shown:

IT IS on this 31st day of March 2017,

**ORDERED** that the motion of Plaintiff [D.I. 219] seeking to quash Defendants' subpoena, shall be, and is hereby, **GRANTED**; and it is further

**ORDERED** that the motion of non-party Jill Houck [D.I. 238], seeking to quash Defendants' subpoena, shall be, and is hereby, **GRANTED**.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jerome B. Simandle